## William D. Gullett *et al.*
### *v.*
## Charles E. Lippincott *et al.*

SCHOOL LANDS—*right of settler or occupant to enter.* The act of 1835, in relation to the sale of school lands belonging to certain fractional townships, and which provided that any person or persons living upon any of the lands in Greene county, or having improvements thereon, might enter the same at their appraised value, was not intended to apply only to persons living on or having improvements on the same at the passage of the act, but applies to persons living on and having improved the same when it is appraised for sale.

APPEAL from the Circuit Court of Greene county; the Hon. CHARLES D. HODGES, Judge, presiding.

This was a bill in chancery, filed by William D. Gullett and James J. McClimans against Charles E. Lippincott, Samuel Wells, Massey Cox, Cassius Heskett and William M. Benner. The object of the bill appears in the opinion.

Messrs. WOODSON & WITHERS, for the appellants.

Messrs. HODGES & BURR, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, exhibited in the circuit court of Greene county, by appellants, who were tax-payers, residents and trustees of schools of a certain township in Greene county. to restrain the Auditor from issuing patents to appellees, Wells, Haskett, Cox and Benner. and to set aside a sale of certain school lands in Greene county made by Caleb Worley, superintendent of schools, to each of said parties.

The bill charges that the proceedings for the sale of the lands were under and in conformity to an act of the legislature passed January 17, 1835, but it is alleged that neither of the defendants resided on or made improvements upon the lands prior to the passage of the act, and that they had no right to purchase the lands of the superintendent of schools.

The answer sets up the sale of the lands under the act of 1835, under which it is insisted the defendants had the right to purchase of the superintendent of schools, and are entitled to patents from the Auditor.

The cause was heard upon bill, answer, exhibits and affidavits filed, and upon the hearing the court dissolved the injunction and dismissed the bill, and complainants bring the record here by appeal.

The only question necessary to be considered is, whether the sale of these lands was authorized by the act of 1835.

The land in controversy constituted a quarter section, and belonged to a fractional township. Under the School Law, no disposition could be made of the land, because there was not the requisite number of inhabitants of the fractional township to secure a sale by petition. Under this state of facts the legislature passed the act of 1835. Session Laws of 1835, page 31. The second section of the act provides that, such lands as have been selected in lieu of the sixteenth sections in fractional townships, upon the Mississippi and Illinois rivers in Greene county, may be sold, or any portion thereof belonging to either of said fractional townships, upon the petition of three-fourths of the inhabitants of said townships; or if there be not ten inhabitant voters in said townships, said lands may be sold by the petition of any fifty legal voters of the county in which such lands lie, in the same manner as other lands are sold, under the laws providing for the sales of section sixteen in the different counties in this State; and the money arising from the sale shall be disposed of in the same manner, for the benefit of the inhabitants of the several townships, as other moneys derived from the sale of sections sixteen.

Section three of the act provides that, should there be any person or persons living upon any of the lands selected in lieu of the sixteenth sections in said fractional townships in Greene county, or have any improvements thereon, they may apply, after the same shall have been valued (which valuation shall be the same as if no improvement had been made thereon), to the school commissioners of said county, who shall permit them to enter the same at the valuation of the trustees of the township to which said land belongs; and if there should be no trustees in said township to which the land belongs, then the county commissioners' court of said county shall appoint three disinterested men of said county to make said valuation.

Under this act three disinterested men were duly appointed by the county court to appraise the lands, who subdivided the

quarter into forty-acre tracts, and fixed a valuation on each forty.

The proof is clear that the land was appraised at its full value. The superintendent of schools then advertised the lands for sale. Some time after the land had been advertised for sale, the defendants each presented to the superintendent of schools his affidavit showing that he was the occupant and owner of the improvements upon a designated forty-acre tract of the land, and tendered the valuation placed upon the tract by the appraisers, which was received by the superintendent, and a certificate of entry given.

The appellants contend, under the third section of the act of 1835, the defendants, Wells, Haskett, Cox and Benner, were not entitled to the privilege of entering the land at the appraised value, because they, at the time the act was passed, did not reside upon, neither had they made improvements upon the land.

We do not think a fair or reasonable construction of the act will limit its provisions to those who occupied or had improvements upon the land at the time the act went into effect.

Had such been the object or intent of the legislature, certainly different language would have been used to express that intent.

The language is, "Should there be any person or persons living upon any of the lands selected in lieu of the sixteenth section in said fractional townships in Greene county, or have any improvements thereon, they may apply after the same shall have been valued." The section does not read "occupants at the time of the passage of the act," neither is any time specified when the improvements may have been placed upon the land in order to protect the settler.

The language of the section is general, and not confined to the owner of improvements at any specified time.

The object seems to have been to afford protection to the party occupying the land at the time it should be appraised

for sale, to the extent of the improvements.    We perceive no reason why a party, who places improvements on the land after the passage of the act, is not entitled to the same protection as one who improves before.

The provisions for appraisement of the land are so well guarded that the school fund was in no danger of not realizing the full value of the land, and it is scarcely reasonable to suppose that it was the object or intent of the legislature to enrich the school fund by the sale of improvements placed upon school lands belonging to one who, perhaps, was so unfortunate as not to be able to own a tract of land to improve for himself.

No error appearing in the record, the decree of the circuit court will be affirmed.

*Decree affirmed.*